IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No.  06-cv-02270- REB-MJW

RLI INSURANCE COMPANY,

    Plaintiff,

v.

TAG STEEL, INC.,
SAMUEL N. GUNTER, individually, and
TAMMERA A. GUNTER, individually.

    Defendants.

## ORDER DENYING MOTION TO DISMISS AND MOTION TO CHANGE VENUE

**Blackburn, J.**

This matter is before me on the following motions: 1) the **Defendants' Motion To Dismiss for Improper Venue** [#14], filed January 16, 2007; and 2) the **Defendants' Motion (In the Alternative) To Change Venue** [#15], filed January 16, 2007.  The plaintiff filed responses [#22 & #23] to both motions.  The plaintiffs' responses [#22 & #23] are stricken because they were not timely filed.  The defendants filed replies [#25 & #26].  I deny both motions.

### I. JURISDICTION

I have diversity jurisdiction over this case under 28 U.S.C. § 1332.

### II. BACKGROUND

Plaintiff, RLI Insurance Company, issued a performance bond to defendant, Tag Steel, Inc., in 2001.  Defendant Samuel Gunter is the owner of Tag Steel.  Defendant,

Tammera Gunter, is Samuel Gunter's wife and whilom business partner. The performance bond issued to Tag Steel by RLI concerned Tag Steel's work as a subcontractor on two high school construction projects in the Denver, Colorado, area. While the projects were underway, Tag Steel asked RLI for financial assistance to finish the projects. Tag Steel claims its financial problems were caused by cash flow problems originating with the prime contractor on the projects,

In June, 2003, RLI, Tag Steel, and the Gunters executed a Collateral Agreement related to RLI's financial assistance to Tag Steel. *Motion to dismiss* [#14], filed January 16, 2007, Exhibit 3, part 2. Samuel and Tammera Gunter executed the agreement in Weld County, Colorado, on June 11, 2003. *Id.* at CM/ECF pp. 12, 14. The Collateral Agreement has a choice of law provision mandating application of Colorado law. Under the Collateral Agreement, RLI gained complete control over Tag Steel's finances. RLI transferred management of Tag Steel's operating account to a trust fund which was managed by Wall & Associates, an accounting firm in Alabama. In August, 2003, after the construction projects were completed, RLI claimed that Tag Steel owed RLI several hundred thousand dollars. The defendants then discovered that Larry Wall, the accountant who was managing Tag Steel's operating account on behalf of RLI, had written more than one hundred unauthorized checks on the account. Thus, a dispute about the proper accounting for Tag Steel's operating account arose, which dispute informs RLI's claim that it is owed money by Tag Steel.

The Gunters now have separated and filed for divorce. Since about February or 2005, Tammera Gunter has been a resident of Wyoming. Prior to February, 2005, and when the events relevant to this case took place, Tammera Gunter was a putative resident

2

of Colorado. Samuel Gunter resides in Weld County, Colorado. Tag Steel is a Colorado corporation, and RLI is an Illinois corporation. As part of the Collateral Agreement, the Gunters gave RLI a mortgage on their Wyoming ranch as security for the amounts advanced by RLI under the Collateral Agreement. The mortgage documents call for the application of Wyoming law. In 2005, RLI commenced a foreclosure proceeding on the Gunters' Wyoming ranch.

On December 2, 2005, the defendants' Wyoming counsel wrote to RLI to demand that RLI halt the foreclosure action, provide a full accounting for the operating account, and attempt to negotiate a resolution to the defendants' claims against RLI. *Id.*, Exhibit 2. RLI agreed to hold the foreclosure in abeyance until the audit was completed. The parties selected a Wyoming accountant to do the audit and engaged in settlement discussions. On September 21, 2006, the defendants' Wyoming counsel told RLI that the defendants had drafted a complaint, which they were ready to file if the audit and settlement discussions failed to lead to a resolution. RLI's Wyoming counsel suggested that the parties mediate.

On November 13, 2006, RLI filed the present case. The defendants contend that the parties still were attempting to agree on mediation dates when RLI filed its complaint in this case. Within two hours of learning about RLI's filing of this case, Tag Steel and the Gunters then filed their complaint against RLI in the United States District Court for the District of Wyoming.

### III. VENUE

#### A. Dismissal

In their motion to dismiss, defendants seek dismissal of this case for improper

venue under FED. R. CIV. P. 12(b)(3).  28 U.S.C. § 1391(a) governs the issue of venue in diversity actions.  Section 1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

A case brought in an improper venue must be dismissed or transferred to a proper district or division.  28 U.S.C. § 1406(a).  Under the circumstances outlined above, § 1391(a)(2) controls the venue issue raised by the defendants.

The defendants argue that venue for this case is improper in Colorado because Colorado has only a tangential relationship to the parties' claims.  They note that RLI completed execution of the Collateral Agreement and made decisions about the performance of the agreement at RLI's Illinois headquarters.  RLI's agent managed Tag Steel's operating account in Alabama, and RLI initiated the foreclosure against the Gunter's real estate in Wyoming.

I conclude that the occurrence of these related events in states other than Colorado does not demonstrate that venue is improper in Colorado.  The initial bond issued by RLI was issued to Tag Steel, a Colorado corporation, and concerned Tag Steel projects in Colorado.  When RLI issued the bond to Tag Steel, the parties executed an Indemnity Agreement.  *Motion to dismiss* [#14], filed January 16, 2007, Exhibit 3, part 2, CM/ECF pp. 15 - 22.  The Indemnity Agreement was executed by Tag Steel and the Gunters in Colorado.  *Id.*, Exhibit 3, part 2, CM/ECF pp. 20, 22.  The Indemnity Agreement

4

was re-affirmed in the Collateral Agreement. The Collateral Agreement was executed by Tag Steel and the Gunters in Colorado, and prescribes the application of Colorado law. In short, a substantial part of the events or omissions giving rise to this case occurred in Colorado. The relevant events that transpired in Illinois, Alabama, and Wyoming might indicate that venue also would be proper in one or more of those states. However, that fact does not demonstrate the logical or legal converse that venue is improper in Colorado.

The defendants argue also that RLI was forum shopping when it filed this case in Colorado, and that RLI acted in bad faith when it suggested arbitration "as a cover for filing a preemptive action." *Motion to dismiss* [#14], filed January 16, 2007, p. 11. Such an arrière-pensée is not apparent here. As the defendants note, when multiple actions involving the same or substantially similar issues between the same parties are filed in different districts, the "first-filed" rule gives preference to the venue of the first-filed of those actions, unless unusual circumstances warrant an exception. **Marquest Medical Products, Inc. v. McKinnon**b, 864 F.Supp. 154, 156 (D.Colo.1993) (**quoting Martin v. Graybar Electric Co., Inc.**, 266 F.2d 202, 204 (7th Cir.1959). The defendants argue that RLI's forum shopping and bad faith justify dismissal of this case for lack of proper venue. I disagree.

This case has strong ties to Colorado, and venue is proper in Colorado. The fact that RLI chose Colorado over other venues, by itself, does not indicate improper forum shopping. RLI's choice of Colorado is the only fact cited by the defendants to indicate that RLI was forum shopping. There is no indication that RLI will somehow receive more favorable treatment in Colorado than it would elsewhere. A litigant's efforts to find such a

5

particularly favorable forum is the essence the type of forum shopping that is disfavored. As the parties discussed mediation, it was apparent that the defendants were on the verge of initiating litigation. Under the circumstances evident in the record of this case, I conclude that the fact that RLI decided to file its case first does not demonstrate the type of bad faith tactics that justify the conclusion that venue in Colorado is improper, when the other facts indicate that venue in Colorado is proper.

In sum, I conclude that venue for this case is proper in Colorado under § 1391(a)(2), and that dismissal of this case from improper venue under 28 U.S.C. § 1406(a) is not appropriate.

### B.  Change of Venue

As an alternative to dismissal, the defendants seek a transfer venue to the District of Wyoming.  Under 28 U.S.C. § 1404(a), a court may grant a change of venue to any other district or division where the case might have been brought "for the convenience of the parties and witnesses" or "in the interest of justice."  § 1404(a).  The relevant factors in determining a section 1404(a) motion for change of venue include:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

***Chrysler Credit Corp. v. Country Chrysler, Inc.***, 928 F.2d 1509, 1516 (10th Cir. 1991). Generally, there is a strong presumption in favor of hearing a case in the plaintiff's chosen forum.  ***Piper Aircraft Co. v. Reyno***, 454 U.S. 235, 255 (1998).  That presumption is

overcome "only when the private and public interest factors clearly point towards trial in the alternative forum." *Id*. A foreign plaintiff's choice of forum, however, warrants less deference. *Id*. at 256.

In this case, RLI's choice of forum is entitled to some deference. There is no indication that the accessibility of witnesses and other sources of proof is any better in Wyoming than in Colorado, nor does it appear that the cost of proof is likely to be significantly lower in Wyoming. Tammera Gunter has to travel further to the Denver Federal Courthouse, as compared to the Federal Courthouses in either Cheyenne or Casper Wyoming. This factor weighs in favor of Wyoming, but it does not have great weight.

The defendants argue that RLI's foreclosure efforts against the Gunter's Wyoming ranch indicate that any judgment would be more easily enforced in Wyoming. If a foreclosure is necessary to enforce a judgment, then that judgment would be in favor of RLI. By filing in Colorado, RLI has chosen to bear the burdens of enforcing a Colorado judgment. If this case leads to a judgment in favor of the defendants, indicating that the Gunter's do not owe RLI any money, then the Wyoming foreclosure could be resolved with relative ease. The enforceability of judgment factor does not weigh heavily in favor of either venue.

Neither the Wyoming nor Colorado venues raise significant advantages or obstacles to a fair trial. Colorado does have a more congested docket than Wyoming, but this congestion is not so severe that this factor weighs significantly in favor of Wyoming. Nothing in the record indicates that this case will present conflict of law problems. The Collateral Agreement is at the heart of this case, and that agreement calls for the

application of Colorado law. It is advantageous to have a Colorado federal court determine the application of Colorado law. RLI's mortgage on the Gunter's Wyoming ranch is less central to this dispute than the Collateral Agreement, and the application of Wyoming law to the mortgage does not weigh heavily in favor of venue in Wyoming. There are no other significant considerations of a practical nature that would make trial and other proceedings significantly more easy, expeditious, and economical in Wyoming, as opposed to Colorado.

In sum, the factors relevant to a change of venue for the convenience of the parties and witnesses or in the interest of justice, under 28 U.S.C. § 1404(a), do not weigh in favor of a transfer of venue to Wyoming.

## IV. PLAINTIFF'S TARDY RESPONSES

The defendants filed their motion to dismiss [#14] and their motion for change of venue [#15] on January 16, 2007. Under D.C.COLO.LCivR 7.1C, the plaintiff's responses to these motions were due 20 days later, on February 5, 2007. On February 5, 2007, at about 4:53 p.m. (MST), the plaintiff filed its unopposed motion [#20] for a five day extension of time to respond to the defendants' motions. On February 6, 2007, I entered a minute order [#21] denying the plaintiff's motion for extension of time due to the plaintiff's "failure to comply with REB Civ. Practice Standard II.G.1. and 2." *Minute Order* [#21], filed February 6, 2007. On February 8, 2007, without filing any other motion concerning the expired deadline for filing responses, the plaintiff filed its tardy responses [#22 & #23] to the defendants' motions. The plaintiff's responses [#22 & #23] are stricken as untimely.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendants' Motion To Dismiss for Improper Venue** [#14], filed January 16, 2007, is **DENIED**;

2.  That the **Defendants' Motion (In the Alternative) To Change Venue** [#15], filed January 16, 2007, is **DENIED**;

3.  That the **Plaintiff's Response to Defendants' Motion To Dismiss for Improper Venue** [#22], filed February 8, 2007, is **STRICKEN** as untimely; and

4.  That the **Plaintiff's Response to Defendants' Motion (In the Alternative) To Change Venue** [#23], filed February 8, 2007, is **STRICKEN** as untimely.

Dated September 27, 2007, at Denver, Colorado.

                              **BY THE COURT:**

                              **s/ Robert E. Blackburn**
                              **Robert E. Blackburn**
                              **United States District Judge**